**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

MONTVILLE TOWNSHIP,

        Plaintiff,

    v.

WOODMONT BUILDERS, LLC; DAVID
MANDELBAUM; NATHAN MANDELBAUM;
RONALD G. TARGAN; LESLIE J. KORALEK AND
RICHARD W. KORALEK, as Co-Trustees under the
Anita S. Koralek Living Trust and POST, BUCKLEY,
SCHUH & JERNIGAN, INC.,

        Defendants.

CIVIL ACTION NO. 03-2680
(DRD)

**O P I N I O N**

Martin F. Murphy, Esq.
JOHNSON, MURPHY, HUBNER,
MCKEON & WUBBENHORST
51 Route 23 South
P.O. Box 70
Riverdale, NJ 07457

Gregory J. Coffey, Esq.
COFFEY & ASSOCIATES
465 South Street
Morristown, NJ 07960

    *Attorneys for Plaintiff*

Dennis M. Toft, Esq.
Gage Andretta, Esq.

WOLFF & SAMSON, PC
The Offices of Crystal Lake
One Borland Drive
West Orange, NJ 07052

Laurence B. Orloff, Esq.
ORLOFF, LOWENBACH, STEFELMAN & SIEGEL, P.A.
101 Eisenhower Parkway
Roseland, NJ 07068-1082

    *Attorneys for Defendant Woodmont Builders, LLC*

Bennett M. Stern, Esq.
Mark S. Winter, Esq.
STERN, LAVINTHAL, FRANKENBERG, & NORGAARD, LLC
293 Eisenhower Parkway
Suite 300
Livingston, NJ 07039

    *Attorneys for Defendants Nathan Mandelbaum and David Mandelbaum*

Jeffrey P. Blumstein, Esq.
SZAFERMAN, LAKIND, BLUMSTEIN,
WATTER, BLADER, LEHMANN & GOLDSHORE, PC
Quakerbridge Executive Center
101 Grovers Mill Road – Suite 104
Lawrenceville, NJ 08648

    *Attorneys for Defendant Post, Buckley, Schuh & Jernigan, Inc.*

**DEBEVOISE, Senior District Judge**

### *I. PROCEDURAL HISTORY*

This suit arises out of a purchase of a property located in Montville Township, New

Jersey, by Plaintiff Montville Township ("the Township") . The Township's complaint in this

case asserts fourteen counts against Defendants Woodmont Builders, LLC ("Woodmont"), a

developer, David and Nathan Mandelbaum ("the Mandelbaums"), Ronald G. Targan, Leslie J.

Koralek, and Richard W. Koralek, as Co-Trustees under the Anita S. Koralek Living Trust

(collectively the "Trustees") the prior owners of the property, and Post, Buckley, Schuk & Jemigan, Inc. ("PBS&J"). The Mandelbaums moved to dismiss the Complaint, and PBS&J moved to dismiss Counts I through XI. On August 31, 2004, Judge Walls issued an opinion granting PBS&J's motion[1] and dismissing all but Counts II, III, and XII against the Mandelbaums. Woodmont now moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) on Counts I through X, and for summary judgment pursuant to Fed. R. Civ. P. 56(c) on Counts XI and XII. The Mandelbaums move for summary judgment on Counts II, III, and XII, the remaining counts against them[2]. The case was reassigned to this Court on June 8, 2005. For the reasons stated below Woodmont's motion for judgment on the pleadings is granted on Counts I through X; (2) Woodmont's motion for summary judgment is granted on Counts XI and XII; and (3) the Mandelbaums' motion or summary judgment is granted in its entirety.

## II. FACTS

The property at issue in this case ("the property") is approximately 130 acres in the Township of Montville intersected by Interstate Route 287. (Compl. ¶ 7.) The Mandelbaums owned the property from March 1970 until July 1999, when approximately 100 acres of the property were designated as "open space" and sold to the Township. (Compl. ¶¶ 7,8.) Before the Mandelbaums owned the property, it was operated for agricultural purposes. (Compl. ¶ 9.) The

---

[1] PBS&J did not move to dismiss Counts XII, XIII and XIV, and those counts against it survived Judge Walls's opinion and order.

[2] According to David and Nathan Mandelbaum, they co-owned the property in question with Defendants Ronald G. Targan and Leslie J. Koralek and Richard W. Koralck as Co-Trustees under the Anita S. Koralek Living Trust. The Mandelbaums waived service of process as to themselves, and to date the Township has not served Targan or the Koraleks. It would appear that the complaint as to them is subject to dismissal pursuant to Fed. R. Civ. P. 41(b) for failure to prosecute.

3

prior owners maintained composts and dumps for land disposal of wastes, as well as drums of chemicals and insecticides. (Compl. ¶ 10.) As a result of these agricultural operations, DDT, lead, and arsenic entered the soil of the property.

Prior to October 1997, Woodmont entered into an agreement with the Mandelbaums and the other individual defendants "whereby Woodmont would develop the property for the construction of single family dwelling houses." (Compl. ¶ 12.) In October 1997, Woodmont applied for preliminary major subdivision approval of the property into forty-seven building lots. (Compl. ¶ 13.) Its application was denied by the Township's planning board. (Compl. ¶¶ 13-14.) In response, Woodmont and the owners filed an "Action in Lieu of Prerogative Writ" in New Jersey Superior Court against the Township. (Compl. ¶ 15.) The parties settled the case. (Compl. ¶ 16.) The Settlement Agreement provided that the Township would pay $2.2 million for 100 acres of the property, and that Woodmont would file an amended subdivision application for 25 residential lots on the remainder of the property. (Compl. ¶ 16.)

The Township's planning board approved Woodmont's amended subdivision application. (Compl. ¶ 20.) The resolution memorializing the approval included a provision that "[a]ll debris, junk, and the like shall be removed from the entire site . . . prior to any conveyances." (Compl. ¶¶ 22-23.) In May 1999, the Township and Woodmont executed a "Developer's Agreement" which incorporated by reference the subdivision approvals. (Compl. ¶ 24.) The Township had obtained a Phase I Environmental Assessment, dated April 1998 as required by the County of Morris, which was funding a substantial portion of the Township's acquisition cost. (Compl. ¶ 29.) The environmental engineering firm of PBS&J prepared the Phase I Environmental Assessment. The Phase I Environmental Assessment indicated that there was an "accumulation

4

of abandoned motor vehicles, tires, tanks, construction debris, household debris, and other abandoned items." (Compl. ¶ 28.) The Township and the County required removal of the debris as a condition of closing (Compl. ¶ 29, 30). Counsel for Woodmont advised the Township in December 1998 and January 1999 that Woodmont would remove all debris prior to closing on the property. (Compl. ¶¶ 30, 31.) Woodmont and the Mandelbaums represented that the debris was cleared from the property. (Compl. ¶ 32.) The Township hired an environmental consulting firm to inspect the property, and the consulting firm indicated that the debris had been cleared. (Compl. ¶¶ 33-35.) The Township's planning board then authorized the perfection of the subdivision of the property; the Township authorized the closing of title on the open space portion of the property; and on July 13, 1999, the owners conveyed the property to the Township. (Compl. ¶¶ 36, 37, 39.)

However, in December 1999, the Township discovered that the property was in the same condition as it was when the Phase I Environmental Assessment was conducted, and the Township demanded the Defendants clean up the property. (Compl. ¶¶ 40-42.) Soil investigation revealed that there were DDT, lead, and arsenic present at levels above the commercial and residential clean up standards imposed by the New Jersey Department of Environmental Protection. (Compl. ¶ 45.) Woodmont and the Mandelbaums refused to clean the property and filed a prerogative writ action (the "State Action") in New Jersey Superior Court. (Compl. ¶ 44.) They sought relief from the Township's denial of further building permits and/or certificates of occupancy for certain subdivided lots, and the Township counterclaimed, asserting breach of contract and misrepresentation. (Compl. ¶ 44.) The third count of the Township's counterclaim in the State Action, alleging misrepresentation, was identical in all material respects

to Count XII in this action. (Woodmont's Undisputed Facts ¶ 3.) On January 22, 2004, Woodmont and the Township settled the State Action and the settlement was placed on the record of the court. (*Id.* at ¶ 4.) The settlement provided that the Township would "make no claim of any sort under CERCLA or the New Jersey Spill Act or any other environmental statute or law against Woodmont or its contractors in connection with this cleanup." (Woodmont's Reply at 2.) On February 2, 2004, a Stipulation and Order was entered in the State Action dismissing with prejudice all of the Township's claims against Woodmont relating to the debris cleanup. (Woodmont's Undisputed Facts ¶ 5.)

At present, Woodmont has completed construction on all lots in the subdivision except one, and has deeded those lots to purchasers of the residences constructed there. (Woodmont's Undisputed Facts ¶ 6.) Soils are stored on the remaining lot and the New Jersey Department of Environmental Protection would have to approve any construction on that lot. (*Id.*)

The Complaint contains fourteen counts, only twelve of which are applicable on the instant motion, because Counts XIII and XIV name only PBS&J.

Count I of the complaint asserts a claim for response costs against all the defendants under §107(a), 42 U.S.C. §9607(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). Judge Walls found that the plaintiff Township as owner of the 100 acres was a potentially responsible party ("PRP"), and under the law in this Circuit a PRP may not bring a §107 recovery action against another PRP unless it is an innocent owner. New Castle County v. Haliburton NUS Corp., 113 F.3d 1116 (3d Cir. 1997). Because the Township was not an innocent owner Judge Walls granted PBS&J's and the Mandelbaums' motion to dismiss Count I.

6

Count II of the complaint asserts a contribution claim against all the defendants under §113(f)(1) of CERCLA, 42 U.S.C. §9613(f). Judge Walls held that claims under §113(f)(1) may only be brought by PRPs as defined in 42 U.S.C. §9607(a)(1)-(4). He found the PBS&J was alleged to have done nothing except conduct a Phase I Environmental Assessment and that, therefore, it was not a "covered person" and thus liable under CERCLA as a PRP. He dismissed Count II against PBS&J.

Judge Walls found that the complaint sufficiently alleged conduct on the part of the Mandelbaums to constitute them PRPs and that because the Township was also a PRP, its claim for contribution under §113(f)(1) must stand. It denied the Mandelbaums' motion to dismiss Count II.

Count III seeks a declaratory judgment that all defendants are liable to the Township under CERCLA. Based on his dismissal of Counts I and II against PBS&J, Judge Walls granted PBS&J's motion to dismiss Count III as to it; based on his denial of the Mandelbaums' motion to dismiss the Count II CERCLA claim, Judge Walls denied the Mandelbaums' motion to dismiss Count III.

Count IV asserts a claim for contribution against all Defendants under the New Jersey Spill Act, N.J.S.A. 58:10-23.11(f)(a)(2) (the "Spill Act"). In his opinion Judge Walls found that "[b]ecause Plaintiff makes no allegation of an act or omission by PBS&J that resulted in a discharge under the Spill Act, the Fourth Count against PBS&J is dismissed.

As to the Mandelbaums, Judge Walls stated, "[t]hough the pleadings are sufficient to state a claim against the Mandelbaum Defendants under CERCLA by virtue of their previous ownership of the property, the mere fact of ownership is insufficient to state a claim under the

Spill Act.  Spill Act liability requires 'some act or omission of ... conduct' by Defendants which is not alleged here."  Consequently, Judge Walls dismissed Count IV as against the Mandelbaums.

Count V alleges a strict liability ultra-hazardous or inherently dangerous activity claim against all defendants.  As to PBS&J Judge Walls's opinion noted that the complaint alleged only that PBS&J prepared a Phase I Environmental Assessment regarding the subject property, that there are no allegations from which the court can infer that PBS&J created, stored, used or released hazardous substances on the subject property and that "[c]onsidering the Restatement [(Second of Torts §520 (1977)] factors ... the performance of a Phase I Environmental Assessment does not present a high risk of harm and any harm from failure to identify areas of concern can be eliminated by the exercise of reasonable care."  The court dismissed Count V as to PBS&J.

Turning to the Mandelbaums, Judge Walls assumed, without deciding, that the use of pesticides containing hazardous substances is an abnormally dangerous activity.  He observed that the only inference that an be drawn from the allegations in the complaint is that pesticides containing hazardous substances were used during the time that the Mandelbaums owned the property but that there are no specific factual allegations that the Mandelbaums "carried on" any abnormally dangerous activity themselves.  Consequently, he held, the complaint failed to state a claim against these Defendants in Count V.

Count VI asserts a claim for restitution against all Defendants.  Citing Restatement of Restitution §106 (1937) and pertinent federal cases, including Smith Land & Improvement Corp. v. The Celotex Corp., 851 F.2d 86 (3d Cir. 1988); and Mayor and Council v. Klochner &

Klochner, 811 F. Supp. 1039 (D.N.J. 1993), Judge Walls held that the Township, as the owner of

the property under a legal duty to remediate the environmental condition of the property, is not

entitled to restitution. He dismissed Count VI as to PBS&J and the Mandelbaums.

In Count VII the Township seeks contribution against all the Defendants under New

Jersey's Joint Tortfeasors Contribution Act, N.J.S.A. 2:53A-1, et seq. Citing Pennsylvania

Greyhound Lines, Inc. v. Rosenthal, 14 N.J. 372 (1954), Judge Walls held that the Township's

claims under the Act failed because the statutory right of contribution accrues only on the

payment by a joint tortfeasor of a money judgment against him for the injurious consequences of

the wrong. The court dismissed the complaint against PBS&J and the Mandelbaums because the

Township did not plead entry of a judgment against it.

Count VIII asserts against all Defendants a claim based upon common law

indemnification. Citing New Jersey case law, Judge Walls noted that "[t]he right of indemnity

rests upon a difference between the primary and secondary liability of two persons, each of

whom is made responsible under the law to an injured party. It is a right which enures to a

person who, without active fault on his own part, has been compelled by reason of some legal

obligation, to pay damages occasioned by the initial negligence of another, and for which he

himself is only secondarily liable." The court dismissed Count VIII of the complaint against

PBS&J and the Mandelbaums because the Township "has not included any specific allegations

or allegations from which the Court could infer, that PBS&J or the Mandelbaum defendants

caused the contamination of the subject property."

Count IX asserts a claim against all Defendants based upon alleged creation of a public

nuisance. "In New Jersey, a public nuisance consists of an unreasonable interference with the

exercise of a right common to the general public." <u>Mayor of Alpine Borough v. Brewster</u>, 7 N.J.
42, 50 (1951). Judge Walls observed that the complaint fails to identify what public right the
continuing presence of hazardous substances on the premises interfered with. Further, the
opinion states, "the Complaint contains no allegation, or facts from which an inference arises,
that PBS&J aimed, used, or disposed of hazardous substances at the property. Likewise, as noted
above, there are no specific allegations that the Mandelbaum Defendants actually discharged or
were in some way responsible for the discharge of hazardous substances on the property." Count
IX was dismissed as to PBS&J and the Mandelbaums.

Count X of the complaint charges all Defendants with negligence alleging that "the
defendants herein owed a duty to store, treat, dispose and otherwise manage their hazardous
substances in such a manner as to prevent any harm or injury to the public health and welfare and
to the environment by preventing and/or controlling releases and threatened releases of hazardous
substances at the Site." Judge Walls held that the Township failed to state a claim of negligence
against PBS&J because there is no allegation in Count X that PBS&J was involved in the
storage, treatment, management, or disposal of the named hazardous substances found on the
property or that it owned the hazardous substances." Judge Walls also held that "there are no
specific allegations or facts from which an inference can be drawn that the Mandelbaum
Defendants themselves actually stored, treated or disposed of hazardous substances on the
property" and that, therefore the Township failed to state a claim of negligence against either
PBS&J or the Mandelbaums. Count X was dismissed as against them.

Count XI seeks injunctive relief as against all Defendants on account of Woodmont's
continued construction of residential dwellings on the subdivided portion of the subject property.

10

Judge Walls held that because "[t]here are no allegations that PBS&J or the Mandelbaum Defendants are involved in the construction activities resulting in '[f]urther disruption and excavation of soils . . . [which] present[s] an imminent threat to residents and the public as a result of the significant potential for these soils to contain' hazardous substances," the Township failed to state a claim for injunctive relief against PBS&J and the Mandelbaums. Count XI was dismissed as to them.

Count XII asserts a claim against all Defendants for negligent misrepresentation, alleging that the Township acquired the property in reliance on the Defendants' negligent misrepresentations regarding its quality and condition. PBS&J did not move to dismiss Count XII. Judge Walls denied the motion of the Mandelbaums to dismiss Count XII, holding that the complaint states a claim for negligent misrepresentation against the Mandelbaums.

Counts XIII (intended beneficiary claim) and XIV (negligence against PBS&J) are directed only against PBS&J. PBS&J did not include those counts in its motion to dismiss heard by Judge Walls.

After Judge Walls had decided the PBS&J and Mandelbaums motions to dismiss, there remained in the case Counts I through XII against Woodmont, Counts II, III and XII against the Mandelbaums and Counts XII, XIII and XIV against PBS&J. As noted above Woodmont now moves for judgment on the pleadings on Counts I through X and for summary judgment on Counts XI and XII and the Mandelbaums move for summary judgment on Counts II, III and XII.

### III. DISCUSSION

**A.    Standards for Judgment on the Pleadings and Summary Judgment**

Fed. R. Civ. P. 12(c) allows a party to move for judgment on the pleadings "after the

pleadings are closed but within such time as not to delay the trial." When the basis for the Rule

12(c) motion is that the nonmoving party has failed to state a claim in its complaint, the court

employs the same standards as when it decides a 12(b)(6) motion. *Turbe v. Gov't of Virgin

Islands*, 938 F.2d 427, 428 (3d Cir. 1991). Thus the court accepts all facts stated in the

complaint as true and draws all reasonable inferences in favor of the plaintiff. *Id.* If the court

cannot grant relief based on any set of facts that the plaintiff could prove, then judgment for the

defendant is appropriate under Rule 12(c). *Id.*

Fed. R. Civ. P. 56(a) allows a defendant to seek summary judgment on "any part" of a

plaintiff's claim. Summary judgment will be granted as to any part of the plaintiff's claim if the

record shows "that there is no genuine issue as to any material fact and that the [defendant] is

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the

burden of establishing that there are no genuine issues of material fact for trial. *Celotex Corp. v.

Catrett*, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof at

trial, as Plaintiff does here, the moving party may satisfy its burden on a motion for summary

judgment by showing that the non-moving party has failed to adduce evidence sufficient to

establish an essential element that the non-movant would have to prove at trial. *Id.* After the

moving party meets its initial burden, the non-moving party "must set forth specific facts

showing that there is a genuine issue for trial," or else the court will grant summary judgment.

Fed. R. Civ. P. 56(e)

## B.    Woodmont's Motion to Dismiss Counts One through Ten

### a. Counts I-IV: the environmental law claims

In the first four counts of the complaint the Township claims violations of CERCLA and

the New Jersey Spill Act. In January 2004, in the court record of the settlement of the state

action, the parties agreed that the Township would "make no claim of any sort under CERCLA

12

or the New Jersey Spill Act . . . in connection with this cleanup." (Andretta Decl. Ex. C)  On
February 2, 2004, the state court entered a stipulation and order in the state action dismissing
with prejudice all of the Township's claims against Woodmont relating to debris on the property.
(*Id.*)  The Township does not seek in its complaint to void the settlement.  Thus, Counts I
through IV of the complaint will be dismissed because the parties' settlement agreement bars
those claims.

　　　Were the court to consider on the merits the Township's claims asserted in Counts I, II,
III and IV they would be dismissed for the reasons which are discussed in more detail in the
following part of the opinion dealing with the Mandelbaums' motion for summary judgment on
Counts II and III.

　　　The Township as the owner of the property is a PRP and therefore cannot bring an action
for response costs under §107(a) of CERCLA against Woodmont, another PRP, as it seeks to do
in Count I.  Because the Township has not been sued under §106 or §107(a) of CERCLA it
cannot seek contribution from Woodmont under §113(f)(1) of CERCLA as it seeks to do in
Count II.  Because the Township can seek neither recovery costs nor contribution under
CERCLA as against Woodmont it is not entitled to the declaratory judgment it seeks in Count III.
There is no allegation in the complaint that Woodmont caused hazardous material not previously
present to enter the water or land, and therefore the Township is not entitled to contribution
under the New Jersey Spill Act which it seeks in Count IV of the complaint.

　　　Further, although the order implementing Judge Walls's opinion dealt only with the
motions of PBS&J and the Mandelbaums, the opinion stated that the Township does not have
standing to bring a §107 cost recovery action against any of the Defendants.  This is the law of
the case.

### b.  *Count V: the strict liability claim*

Judge Walls addressed the strict liability claims against PBS&J and the Mandelbaums in

his opinion in this case.  He noted that in order to satisfy even the liberal notice-pleading requirements of Fed. R. Civ. P. 8(a)(2), in multiple defendant actions, the complaint must "clearly specify the claims with which each particular defendant is charged." (quoting 5 Wright & Miller, *Federal Practice & Procedure*, § 1248 at 313-314 (2d ed. 1990)).  Since the complaint contained no factual allegations that the either PBS&J or Mandelbaums had carried on any abnormally dangerous activity themselves, the court dismissed this count against PBS&J and the Mandelbaums.  There are also no specific allegations in the complaint that Woodmont carried on any abnormally dangerous activity on the property.  Therefore, the complaint fails to state a strict liability claim against Woodmont.  Since the legal standard on a 12(c) motion for judgment on the pleadings is the same as the legal standard for a 12(b)(6) motion, judgment on the pleadings will be granted in favor of Woodmont on Count V.

### c.  Count VI: the restitution claim

Judge Walls also held that "restitution of a benefit conferred is not available if that benefit is the result of performing one's own duty."  Judge Walls concluded that since the Township is the owner of the property, it had a legal duty to remediate the environmental condition of the property, and thus the Township is not entitled to restitution in this matter. There is no reason why this rationale would apply to the other defendants and not to Woodmont. Further, in his opinion Judge Walls stated, "Count Six of the Complaint is dismissed as to all Defendants."  Judgment on the pleadings is granted in favor of Woodmont on Count VI.

### d.  Count VII: the contribution claim

The plaintiff in a contribution action must show proof of an entry of a judgment or verdict against him in order to prevail.  *Pennsylvania Greyhound Lines, Inc. v. Rosenthal*, 14 N.J. 372, 382 (N.J. 1954).  Here the Township did not plead entry of a judgment or verdict, so the Township's claim must fail.  *Montville*, Civ. No. 03-2680, slip op. at 23.  In his opinion Judge Walls held that the Township's contribution claim failed against all defendants.  Judgment on the

14

pleadings is granted in favor of Woodmont on Count VII.

### e. Count VIII: the common law indemnification claim

Judge Walls dismissed Count VIII as to PBS&J and the Mandelbaums because common law indemnification requires that the Township incurred damages due to the initial negligence of PBS&J and the Mandelbaums. The Township's complaint did not include any specific allegations that PBS&J and the Mandelbaums "caused the contamination of the subject property." Similarly, the Township's complaint does not include any specific allegation or allegations that would allow the Court to infer that Woodmont caused the contamination of the property. Judgment on the pleadings will be granted in favor of Woodmont on Count VIII.

### f. Count IX: the public nuisance claim

Count IX was also previously dismissed against PBS&J and the Mandelbaum. "A public nuisance consists of an unreasonable interference with the exercise of a right common to the general public." *See Mayor of Alpine Borough v. Brewster*, 7 N.J. 42, 50 (1951). Since the Township has not identified which public right the alleged contamination interfered with, nor specifically alleged how Woodmont was responsible for the discharge of hazardous substances on the property, this Court grants judgment on the pleadings in favor of Woodmont on Count IX.

### g. Count X: the negligence claim

To prevail on a claim of negligence the plaintiff must prove that the "defendant breached a duty of reasonable care, which constituted a proximate cause of the plaintiff's injuries." *Brown v. Racquet Club of Bricktown*, 95 N.J. 280, 288 (1984). In Count X, the Township alleges that the Defendants had a duty to "store, treat, dispose and otherwise manage their hazardous substances in such a manner as to prevent any harm or injury to the public health and welfare and to the environment." (Compl. ¶ 105.) The Township also alleges that "Defendants knew or should have known that the manner in which they stored, treated, disposed [or] otherwise managed their hazardous substances could foreseeably cause releases of hazardous substances

15

into the environment." (Compl.¶ 106.) However, as Judge Walls noted in dismissing this count against PBS&J and the Mandelbaums, "there are no specific allegations or facts from which an inference can be drawn that" Woodmont "actually stored, treated or disposed of hazardous substances on the property." Thus the Township cannot prove its negligence claim, and judgment on the pleadings will be granted on Count X in favor of Woodmont.

**C.    Woodmont's Motion for Partial Summary Judgment on Counts Eleven and Twelve**

### a. Count XI: injunctive relief

In Count XI, the Township alleges that Woodmont "continue[s] to construct residential dwellings" on the property and that "[e]xcavation and disruption of contaminated soils has and continues to occur . . . as a result of construction and excavation activities." (Compl. ¶ 109.) The Township further alleges that because of "the significant potential for these soils to contain constituent quantities of DDT, lead and arsenic," the continuing construction and excavation "constitute [an] imminent and substantial threat to the residents, the groundwater aquifer supplying drinking water and the public." (Compl. ¶ 110.) As a result, the Township requests, among other things:

> (b)Temporary and permanent injunctive relief for the eminent [sic] and substantial threat posed by contaminated soils at these properties;
>
> ...
>
> (e) Such other relief as the Court deems just and proper.

(Compl. ¶ 111.) Woodmont contends that the Township's claim for injunctive relief on Count XI is moot. A claim for injunctive relief is moot if subsequent events during adjudication "eliminate a plaintiff's personal stake," in the injunction or, "prevent a court from being able to grant the requested relief." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-699 (3d Cir. 1996). A claim for injunctive relief is also moot if "(1) the alleged violation has ceased, and there is no reasonable expectation that it will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *New Jersey Turnpike*

16

*Authority v. Jersey Central Power & Light*, 72 F.2d 25, 31 (3d Cir. 1985). Thus if the facts show

that the Court could not award meaningful injunctive relief "for the threat posed by contaminated

soils at these properties" (Compl. ¶ 111) as a result of events that have transpired in this case

since the start of litigation, Count XI should be dismissed as moot.

Woodmont filed a statement of undisputed material facts pursuant to L. Civ. R. 56.1,

which the Township does not contest in its opposition brief. In fact, the Township does not even

respond to Woodmont's partial summary judgment motions in its opposition brief. Thus, the

Court will accept as true Woodmont's uncontested statement of facts for the purposes of ruling

on Count XI. *See White v. Camden City Bd. of Educ.*, 251 F. Supp. 2d 1242, 1246 n.1 (D. N.J.

2003) (deeming admitted facts stated in defendant's statement of facts and uncontested by

plaintiff); *Hill v. Algor*, 85 F. Supp. 2d 391, 408 n.26 (D. N.J. 2000) (same). Woodmont has now

completed construction activities on all lots but one on the property. (Woodmont's Undisputed

Material Facts ¶ 6.) Woodmont has also sold all of the lots but one to third parties. *Id.* The New

Jersey Department of Environmental Protection would have to approve any construction

activities on the remaining lot. *Id.* Since there is one lot in the subdivision that could be

developed and sold in the future, however, this Court *could* give meaningful injunctive relief by

entering an injunction barring any further work on that lot. Therefore, though most of the

injunctive relief the Township originally sought is unavailable now, events subsequent to the

filing of this suit have not rendered Count XI's claim for injunctive relief totally moot.

However, in order to receive a preliminary injunction, the Township would have to

establish (1) reasonable likelihood of success on the merits, (2) irreparable harm absent the

injunction, (3) the harm to the Township would outweigh the harm to Woodmont should the

Court grant the injunctive relief, and (4) the injunction serves the public interest. *Forum for

Academic and Institutional Rights v. Rumsfeld*, 390 F.3d 219, 228 (3d Cir. 2004). To receive a

permanent injunction, the Township would have to establish actual success on the merits, but the

rest of the factors would remain the same. *Amoco Production Co. v. Village of Gambell*, 480

17

U.S. 531, 546 n. 12 (1987). Even assuming for the sake of argument that the Township could succeed on the merits, the Township cannot show sufficient irreparable harm to warrant injunctive relief. Since the New Jersey Department of Environmental Protection is overseeing the development of the remaining plot of land, there is no real likelihood that irreparable harm will occur absent the issuance of an injunction. Therefore, because the Township cannot establish irreparable harm, summary judgment will be granted on Count XI in favor of Woodmont.

### b. Count XII: negligent misrepresentation

In Count XII the Township alleges that due to the misrepresentations of Woodmont about the "quality and condition" of the property, the Township bought the property and incurred damages. Woodmont contends, and the Court agrees, that the Township is barred from asserting Count XII against Woodmont by the doctrine of res judicata.

28 U.S.C. § 1738 mandates that federal courts give "full faith and credit" to state judgments. *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 189 (3d Cir. 1993). As such, federal courts must give res judicata effect to a state judgment "to the extent the state would give its own prior judgment such effect." *Davis v. U.S. Steel Supply*, 688 F.2d 166, 170 (3d Cir. 1982). An examination of New Jersey law reveals that New Jersey would give res judicata effect to the state court's dismissal with prejudice of the Township's misrepresentation claim in a prior proceeding.

In New Jersey, the "doctrine of res judicata provides that a cause of action between parties that has been finally determined on the merits by a tribunal having jurisdiction cannot be relitigated by those parties or their privies in a new proceeding." *Velasquez v. Franz*, 123 N.J. 498, 505 (1991). For a claim to be precluded, "(1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same

18

transaction or occurrence as the claim in the earlier one." *Watkins v. Resorts Int'l. Hotel and Casino, Inc.*, 124 N.J. 398, 412 (1991). A dismissal with prejudice constitutes a final adjudication on the merits of a claim and thus satisfies the first prong of this test. *Velasquez*, 123 N.J. at 507; *see U.S. v. Athlone Indus. Inc.*, 746 F.2d 977, 983 n.5 (3d Cir. 1984) (consent judgment constitutes final judgment on the merits); *In re Prudential Ins. Co. Am. Sales Prac. Litig.*, 261 F.3d 355, 367 (3d Cir. 2001) (class settlement incorporated into final judgment and order has claim preclusive effect). New Jersey state courts analyze four factors to determine if a subsequent claim grows out of the same transaction or occurrence of an earlier claim: (1) whether the acts complained of are substantially the same; (2) whether the recovery theory is the same; (3) whether "the same evidence necessary to maintain the second action would have been sufficient to support the first," and (4) "whether the material facts alleged are the same." *Culver v. Ins. Co. N. Am.*, 115 N.J. 451, 461-462 (1989).

Here, the third count of the Township's counterclaim against Woodmont in the State Action alleged misrepresentation based on Woodmont's representations that Woodmont had cleared the property of debris, when the property had not been cleared. (Andretta Decl. Ex. C. at 13-14.) The Township claimed that as a result of these representations it had closed title on its portion of the property. (Id. at ¶ 48-49). The state court dismissed with prejudice the Township's counterclaims. (Woodmont's Undisputed Facts ¶ 5.) In Count XII of its complaint here, the Township alleges negligent misrepresentation, based on the same underlying facts and complaining of the same acts as alleged in the Township's counterclaim in the State Action. (See Compl. ¶¶ 36, 37, 41, 112-115.) Therefore, Count XII arises out of the same transaction or occurrence as the Township's counterclaim, which was adjudicated in the State Action. Moreover, the parties are the same here as in the State Action counterclaim. Thus, Count XII is barred by the doctrine of res judicata and will be dismissed.

**D. The Mandelbaums' Summary Judgment Motion**

19

The Mandelbaums move for summary judgment on the remaining claims against them, Counts II, III, and XII. Counts II and III assert claims against the Mandelbaums under §113(f)(1) of, CERCLA, 42 U.S.C. § 9613 (f)(1), for contribution for costs the Township has incurred in cleaning up the property and for declaratory relief. Judge Walls earlier concluded that Counts II and III stated viable claims for relief against the Mandelbaums, interpreting CERCLA to allow private parties to recover contribution from other potentially responsible parties, and finding that the complaint stated enough facts to infer that the Mandelbaums were potentially responsible parties. Count XII alleges negligent misrepresentation. Judge Walls concluded that the complaint alleged a sufficient factual basis for Count XII to state a claim against the Mandelbaums.

Circumstances have changed since the date of Judge Walls's September 10, 2004 order and opinion. The Supreme Court in Cooper Industries v. Aviall Services, Inc., 125 S. Ct. 577 (Dec. 13, 2004) held that a private party may seek contribution only during or following any civil action under §9606 or §9607(a) of CERCLA. The Mandelbaums have produced evidence that the New Jersey Superior Court issued a stipulation and order dismissing with prejudice the Township's claims against the Mandelbaums virtually identical to those advanced in Count XII of the Township's complaint in this action.

### a. Counts II and III

The Mandelbaums contend that summary judgment should be granted in their favor on Counts II and III, relying on the Supreme Court's decision in *Cooper*. Under *Cooper* a potentially responsible party under CERCLA can only recover for contribution under §113(f)(1) if that party has been previously sued pursuant to 42 U.S.C. § 9607(a) or is subject to a 42 U.S.C. § 9606 administrative order for CERCLA liability. 125 S. Ct. at 583, 584. Here, it is uncontested that the Township has not been sued pursuant to §9607(a) and is not subject to a §9606 administrative order.

20

The Township argues, however, that its Memorandum of Agreement with the State of New Jersey's Department of Environmental protection is analogous to an administrative order pursuant to 42 U.S.C. § 9606. The Township categorizes the Memorandum of Agreement as an "enforcement mechanism," used to "compel private parties to conduct cleanup activities of a contaminated site." The Township contends that it entered into this agreement because it anticipated that the DEP would issue an order compelling it to clean up the property. The Township argues that this case is distinguishable from *Cooper* and it therefore has a right to contribution pursuant to CERCLA.

The Township's argument fails. In *Cooper* the plaintiff notified a state environmental agency of contamination on the subject property. 125 S. Ct. at 582. The state agency directed the plaintiff "to clean up the site, and threatened to pursue an enforcement action if [the plaintiff] failed to" clean up the site. *Id.* Neither the state agency nor the EPA "took judicial or administrative measures to compel cleanup." *Id.* The Court found that even under these circumstances, the plaintiff's cleanup was "voluntary" and therefore the plaintiff was not entitled to contribution pursuant to 42 U.S.C. § 9613. *Id.* at 583, 584.

In the Township's case, there is no evidence that New Jersey ever threatened enforcement action, nor on its own initiative directed the Township to clean up the property. The Memorandum of Agreement is far from a state-initiated administrative order compelling the Township to clean up the property analogous to a 42 U.S.C. § 9606 order. The Memorandum of Agreement states that it "has been developed so that any party interested in conducting a cleanup at a non-residential property can do so with oversight from the Department. The Department will provide oversight as long as the Department is reimbursed for the cost of its review." (Pl.'s Opp'n. Ex. A.) And, given the facts of *Cooper* where the plaintiff *was* threatened with a state enforcement action and directed to cleanup the site in question, the fact that the Township voluntarily entered into the Memorandum of Agreement *in anticipation* of "receiving a directive from [the New Jersey Department of Environmental Protection] compelling cleanup" does not

21

help to distinguish this case. Since the Township's cleanup of the property was "voluntary," *Cooper* dictates that the Township cannot recover pursuant to 42 U.S.C. § 9613. Therefore, the Mandelbaums' motion for summary judgment on Counts II and III is granted.

In the instant case the Township in Count I also sued the Mandelbaums to recover costs under §107(a). Judge Walls dismissed that Count relying on Court of Appeals authority to the effect that a PRP (the Township) cannot obtain recovery of costs against another PRP (the Mandelbaums), New Castle County v. Halliburton NUS Corp., 111 F. 3d 116, 1120-1124 (3d Cir. 1997). Because the Court of Appeals in Cooper had not addressed the question whether a PRP could obtain recovery of costs from another PRP under §107(a) the Supreme Court declined to address that issue, stating that "[t]he §107 claim . . . merit[s] full consideration by the courts below." 125 S. Ct. at 584. The dissentors in Cooper urged that Aviall had sufficiently advanced an alternative claim for recovery under §107 and suggested that such recovery is not statutorily barred by virtue of the fact that Aviall, like Cooper, was a PRP.

Until the Supreme Court addresses the issue, courts in the Third Circuit are bound by New Castle County, which precludes a PRP from obtaining recovery of costs from another PRP under §107(a).

### b. Count XII

The Mandelbaums contend, as did Woodmont, that Count XII is barred by the application of res judicata. In its opposition brief, the Township did not contest the res judicata bar. In the state action, the Township asserted third-party claims against the Mandelbaums closely resembling and incorporating by reference the Township's counterclaims against Woodmont, which included misrepresentation. *(See Andretta Decl. Ex. C at 15-16.)* However, the Township did not explicitly state in its third-party complaint that its cause of action against the Mandelbaums was for negligent misrepresentation. *(Id.)* Nevertheless, even assuming that the Township did not file a negligent misrepresentation claim *per se* against the Mandelbaums in the

state action, Count XII is barred by the doctrine of res judicata as interpreted by New Jersey state courts.

Res judicata bars subsequent actions arising out of the same controversy as an earlier action, if they could have been raised in the earlier action. *Watkins*, 124 N.J. at 412-413. Further, if causes of action arise out of the "same transaction or occurrence," they are considered a single "claim" and, if not raised in the first action, are barred by res judicata from later adjudication. *Id.* at 413. Claim XII arises out of the same facts, allegations, and circumstances as the Township's third party claim in the state action, and the parties here are the same as in the state action. Therefore Claim XII arises out of the same transaction or occurrence as the Township's third-party claims in the state action. Obviously the Township could have filed a misrepresentation claim against the Mandelbaums in the state action, even assuming it did not, because the Township filed a misrepresentation claim against Woodmont. Thus, Count XII is barred by the application of res judicata, and summary judgment will be granted in favor of the Mandelbaums on Count XII.

### III. CONCLUSION

Woodmont's motion for judgment on the pleadings pursuant to Rule 12(c) is granted on Counts I through X; Woodmont's motion for summary judgment is granted on Counts XI and XII; and the Mandelbaums' motion for summary judgment is granted in its entirety.

/s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.

DATED: August 12, 2005

23