NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

MONTVILLE TOWNSHIP, a New Jersey Municipal Corporation,

        Plaintiff,

   v.

WOODMONT BUILDERS, LLC; DAVID MANDELBAUM; NATHAN MANDELBAUM; RONALD G. TARGAN; LESLIE KORALEK AND RICHARD KORALEK, as Co-Trustees under the Anita S. Koralek Living Trust and POST, BUCKLEY, SCHUH & JERNIGAN, INC.,

        Defendants.

CIVIL ACTION NO. 03-2680 (DRD)

**OPINION**

Appearances

COFFEY & ASSOCIATES
Gregory J. Coffey, Esq.
Richard J. Dewland, Esq.
465 South Street
Morristown, New Jersey 07960
    *Attorneys for Plaintiffs*

SZAFERMAN, LAKIND, BLUMSTEIN, BLADER, & LEHMAN, P.C.
Jeffrey P. Blumstein, Esq.
Quakerbridge Executive Center
101 Grovers Road, Suite 104
Lawrenceville, New Jersey 08648
    *Attorneys for Defendant Post, Buckley, Schuh & Jernigan, Inc.*

***OPINION***

**DEBEVOISE, Senior District Judge**

This suit arises out of the purchase of a property located in Montville Township, New Jersey, by Plaintiff Montville Township ("the Township").  The majority of the Counts in the complaint were dismissed by Judge Walls's order of August 31, 2004, and this court's order of August 12, 2005.  The Court will refer to the opinion of August 12, 2005 for a thorough explanation of the underlying facts in this case.  Defendant Post, Buckley, Schuh & Jernigan, Inc. ("PBS&J") now moves to dismiss the remaining counts of Plaintiff's complaint for failure to file an Affidavit of Merit pursuant to N.J.S.A. 2A:53A-26, *et seq*.

## *FACTS*

PBS&J is an environmental engineering firm that was hired by the County of Morris to perform a "Phase I environmental assessment" on the subject property.  (Compl. ¶ 29).  The assessment was a condition of the County's monetary grant to Montville Township for the purchase of the one hundred acre parcel of property, which was to be designated as open space. (Compl. ¶ 29).  In April 1998, PBS&J prepared a report following its assessment which identified several areas of the property which were of concern due to the accumulation of abandoned motor vehicles, tires, tanks, construction debris, household debris, and other abandoned items.  (Compl. ¶¶ 27-28).  In its report, PBS&J noted:

> "While none of the debris was considered hazardous, additional materials in lower layers could be classified as such.  No sampling is recommended for this area at this time; however, when the debris is removed, the lower layers should be carefully examined."

(Dewland Cert. Ex. B at 21).

Following PBS&J's analysis, the Township hired another environmental engineering

firm, Princeton Hydro, LLC, to perform a subsequent inspection of the area and make sure the seller/ developer had corrected the areas addressed in PBS&J's report. (Compl. ¶¶ 34-35). In May 1999, Princeton Hydro reported that the areas of concern had been corrected. (Compl. ¶ 35).

Following conveyance of the property to the Township, in December 1999, an area resident who had walked through the open space reported that the areas of concern addressed by PBS&J remained uncorrected. (Compl. ¶ 40). After receiving the resident's report, representatives from the Township inspected the area and discovered that contrary to Princeton Hydro's report of May 1999, the seller/ developer had not cleaned up the property. (Compl. ¶¶ 45-47). After realizing the discrepancy, the Township hired a third environmental engineering firm, Maser Consulting, to perform an additional assessment of the property. (Compl. ¶ 45). Maser's assessment included soil sampling which discovered the presence of an overabundance of harmful chemicals (including DDT, lead, and arsenic) in the soil. (Compl. ¶ 45).

The three remaining counts of the Township's complaint (the Twelfth, Thirteenth, and Fourteenth Counts) assert claims against PBS&J. The Twelfth Count (Negligent Misrepresentation) alleges that PBS&J breached its duty to disclose conditions of the property that they knew or should have known would affect the negotiated price and/or condition of the property. (Compl. ¶¶ 112-115). The Thirteenth Count (Intended Beneficiary Claim) alleges that PBS&J, an environmental engineering firm, was hired by the County to perform a Phase I environmental assessment on the property and failed to identify the existence of a known hazardous substance on the property. (Compl. ¶¶ 116-124). The Fourteenth Count alleges that PBS&J, an expert in the "area of environmental assessment and site inspection... failed to

exercise reasonable care in preparing the Phase I report and the performance of its duties." (Compl. ¶¶ 127-130).

Presently before the court is PBS&J's motion to dismiss Plaintiffs' complaint for failure to file an Affidavit of Merit. For the reasons set forth below, Defendant's motion will be granted.

## *DISCUSSION*

PBS&J has moved to dismiss the remaining counts of the complaint due to Plaintiff's failure to file an Affidavit of Merit pursuant to N.J.S.A. 2A:53A-26, *et seq*. Plaintiff argues that PBS&J's failure to test the soil or discover the hazardous chemicals during the Phase I analysis constituted a breach of contract, as opposed to professional malpractice, and therefore lies beyond the purview of the Affidavit of Merit Statute.

> In any action for damages...resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices...the person executing the affidavit shall be licensed in this or any other state; have particular expertise in the general area or specialty involved in the action, as evidenced by board certification or by devotion of the person's practice substantially to the general area or specialty involved in the action for a period of at least five years. The person shall have no financial interest in the outcome of the case under review, but this prohibition shall not exclude the person from being an expert witness in the case.
>
> N.J.S.A. 2A:53A-27.

A "licensed person" for the purposes of this case is defined as "an engineer" pursuant to N.J.S.A. 45:8-27, *et seq.;* N.J.S.A. 2A:53A-26(e). The term "professional engineer" is defined as a person who by reason of his special knowledge of the mathematical and physical sciences and the principles and methods of engineering analysis and design, acquired by professional education and practical experience, is qualified to practice engineering as hereinafter defined as attested by his license as a professional engineer. N.J.S.A. 45:8-28. Plaintiff does not dispute that PBS&J is a professional engineering organization which is licensed and holds a certificate of authorization issued by the State in accordance with these rules.

In Couri v. Gardner, 173 N.J. 328, 801 A.2d 1134 (2002), the Supreme Court of New Jersey explained the analysis which is to be performed in cases where lawsuits are filed against professionals not for malpractice actions, but for breach of contract or other types of tort claims. The Court held that it is not the label placed on the action that is pivotal but rather the nature of the legal inquiry. When presented with a tort or contract claim asserted against a professional, rather than focusing on whether the claim is denominated as tort or contract, attorneys and courts should determine if the claim's underlying factual allegations require proof of a deviation from the professional standard of care applicable to that specific profession. Id. at 340-341. If such proof is required, an affidavit of merit is required for that claim, unless some exception applies. Id., citing Hubbard v. Reed, 168 N.J. 387, 390, 774 A.2d 495 (2001) (holding that an affidavit of merit is not required in "common knowledge" cases when an expert will not be called to testify that defendants' care skill or knowledge fell outside acceptable professional or occupational standards or treatment practices). The Court further stated that "when asserting a claim against a professional covered by the statute, whether in contract or in tort, a claimant should determine if

5

the underlying factual allegations of the claim require proof of a deviation from the professional standard of care for that specific profession. If such proof is required, an affidavit of merit shall be mandatory for that claim, unless either the statutory, *N.J.S.A.* 2A:53A-28, or common knowledge exceptions apply." Couri, 173 N.J. at 340-341, 801 A.2d at 1141 (N.J. 2002).

Under the common knowledge doctrine, a malpractice case against a licensed professional may present triable issues without requiring the testimony of an expert. In such a case the jury itself is allowed "to supply the applicable standard of care and thus to obviate the necessity for expert testimony relative thereto." Sanzari v. Rosenfeld, 34 N.J. 128, 141, 167 A.2d 625 (1961). The trial of such a case is essentially no different from "an ordinary negligence case." Id.; see Buckelew v. Grossbard, 87 N.J. 512, 527, 435 A.2d 1150 (1981). Nevertheless, it is the unusual professional malpractice case in which the common knowledge doctrine can be invoked. Hake v. Manchester Township, 98 N.J. 302, 313, 486 A.2d 836 (1985). The basic rule for applying the common knowledge doctrine in a malpractice action "is that the issue of negligence is not related to technical matter peculiarly within the knowledge of the licensed practitioner." Sanzari, 34 N.J. at 142, 167 *A*.2d 625. The most appropriate application of the common knowledge doctrine involves situations "where the carelessness of the defendant is readily apparent to anyone of average intelligence and ordinary experience." Sanzari, 34 N.J. at 140, 167 A.2d 625.

The Thirteenth Count of Plaintiff's Complaint alleges that PBS&J "failed to identify the existence of a known hazardous substance, namely arsenic, on the property, and in doing so breached its contractual obligation to Morris County." (Compl. ¶ 120.) In its opposition to the current motion, Plaintiff notes that the Introduction of PBS&J's Phase I Report states that the

contract objectives "are to determine if current or past land use practices have adversely impacted the site, to identify any other potential environmental concerns, and to determine if additional field investigations are warranted." Plaintiff argues that PBS&J's failure to achieve those objectives constituted a breach of contract because PBS&J recommended that no soil sampling be performed on the property prior to closing. This argument falls short.

In order to show that PBS&J breached its contractual duty to Plaintiff, Plaintiff must prove that PBS&J's recommendation not to immediately perform soil analysis fell outside of the guidelines established by the American Society of Testing and Materials, the Federal National Mortgage Association ("Fannie Mae"), the Federal Home Loan Board, and the New Jersey Department of Environmental Protection's Technical Requirements for Site Remediation (N.J.A.C. 7:26E). These guidelines, which are listed in the introduction to PBS&J's report establish the industry standard of care in the performance of Phase I assessments. (Dewland Cert. Ex. B at 1). In other words, Plaintiff must show that PBS&J was professionally negligent in the performance of the Phase I assessment. Although PBS&J's report states that the objectives of the report are "to determine if current or past land use practices have adversely impacted the site, to identify any other potential environmental concerns, and to determine if additional field investigations are warranted," PBS&J was expected to apply the industry standard in making those recommendations. PBS&J contends that in 1998, during the time of the Phase I assessment, the subject of soil contamination in parcels of land formerly used as orchards was not yet an issue of concern in the New Jersey environmental consulting community. (Blumstein Supp. Decl. Ex. A at 36:2-11). This dispute is a question of fact the resolution of which would require expert testimony.

7

It will be impossible for a lay person to determine whether or not PBS&J breached its contract without determining if it committed professional malpractice. Therefore, as described by the Supreme Court of New Jersey in <u>Couri</u>, the underlying factual allegations require proof of a deviation from the professional standard of care applicable to that specific profession. Despite the Plaintiff's labeling of this claim as a "breach of contract," its substance lies in professional malpractice. Because neither the "common knowledge doctrine" nor any other exception applies in this case, an Affidavit of Merit was required. Plaintiff's failure to submit an Affidavit of Merit is cause for dismissal.[1]

### *CONCLUSION*

For all the reasons stated above, PBS&J's motion to dismiss the Twelfth, Thirteenth, and Fourteenth Counts of the Complaint will be granted with prejudice.

/s/ Dickinson R. Debevoise
Dickinson R. Debevoise, U.S.S.D.J.

January 5, 2006

---

[1] The Twelfth Count is labeled "Negligent Misrepresentation." The Fourteenth Count is labeled "Negligence Against Post Buckley." Both counts clearly allege that PBS&J breached its professional duty to Plaintiff. In its opposition papers, Plaintiff has not responded to PBS&J's motion to dismiss these counts. Additionally, the Court finds no legal authority excusing Plaintiffs from the requirement to file an Affidavit of Merit. These Counts will also be dismissed pursuant to N.J.S.A. 2A:53A-27.