**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MONTVILLE TOWNSHIP,<br><br>                     Plaintiff,<br><br>v.<br><br>WOODMONT BUILDERS, LLC, ET. AL.<br><br>                     Defendants. | Civ. No.  03-2680 (DRD)<br><br>**O P I N I O N** |

*Appearances by:*

COFFEY & ASSOCIATES
by: Gregory J. Coffey, Esq. and Richard J. Dewland, Esq.
465 South Street
Morristown, NJ 07960

    *Attorneys for Plaintiff*

STERN, LAVINTHAL, FRANKENBERG & NORGAARD, LLC
by: Mark S. Winter, Esq.
293 Eisenhower Parkway, Suite 300
Livingston, NJ 07039

    *Attorneys for Defendants David and Nathan Mandelbaum, Ronald G. Targan, and*
    *Richard W. Koralek*

WOLFF & SAMSON, PC
by: Lee Henig-Elona, Esq.
One Boland Drive
West Orange, NJ 07052

    *Attorneys for Defendant Woodmont Builders, LLC*

**DEBEVOISE, Senior District Judge**

This matter involves a dispute between Plaintiff Montville Township ("Montville" or "the Township") and Defendants over which party is responsible for the cost of remediating environmental contamination on a parcel of property purchased by the Township in 1999 ("the Property"). Montville, which engaged in a voluntary cleanup of the Property under the oversight of the New Jersey Department of Environmental Protection ("NJDEP"), seeks to recover cleanup costs from the developer who contracted to build residences on a portion of the Property, Woodmont Builders, LLC ("Woodmont"), and the group of individuals who owned the Property before it was purchased by the Township (the "Mandelbaums").[1] The Township originally filed a 14-Count Complaint asserting claims under (1) §§ 107(a) and 113(f) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601-9675, as modified by the Superfund Amendments and Reauthorization Act of 1986, Pub.L. No. 99-499, 100 Stat. 1613; (2) the New Jersey Spill Compensation and Control Act (the "Spill Act"), N.J. Stat. Ann. §§ 58:10-23.11 to 23.11(2); and (3) various common law doctrines. In a ruling issued on September 10, 2004 the Court dismissed nine of the twelve claims asserted against the Mandelbaums. Subsequently, the Mandelbaums and Woodmont moved, respectively, for summary judgment and judgment on the pleadings. Those motions were granted and the remaining claims dismissed on August 12, 2005. After the Township's Motion for Reconsideration of that ruling was denied, it timely sought review from the Court of Appeals for the Third Circuit.

---

[1] The prior owners include Defendants David and Nathan Mandelbaum, along with former Defendants Ronald G. Targan, Leslie J. Koralek, and Richard W. Koralek. As discussed below, Montville's claims against all individual Defendants other than David and Nathan Mandelbaum have been dismissed.

2

While the Township's appeal was pending the Supreme Court decided <u>United States v. Atlantic Research Corp.</u>, 551 U.S. 128 (2007), a case which overruled a prior decision by the Court of Appeals on which this Court had relied in dismissing Montville's CERCLA claims. Based on that intervening change in law, the Court of Appeals on August 8, 2007 reversed in part this Court's prior rulings and remanded the case for further consideration in light of <u>Atlantic Research</u>.

The Mandelbaum Defendants and Woodmont now move for summary judgment. In response to those Motions, Montville cross-moves for summary judgment on its claims for declaratory judgment and cleanup costs under CERCLA § 107(a) and the New Jersey Spill Act. For the reasons set forth below, the Motions for Summary Judgment submitted by the Mandelbaums and Woodmont will be granted, and the Township's motion will be denied. The Township's claims under CERCLA and the Spill Act will be dismissed. The Court of Appeals did not disturb the Court's earlier ruling dismissing all common law claims, and that decision remains in effect.

## I. BACKGROUND

The facts out of which this litigation arises are substantially similar to those in a related case, <u>Bonnieview Homeowners Association v. Woodmont Builders, LLC</u>, Civ. No. 03-4317 (DRD). The Court's September 22, 2009 Opinion in that case lays out much of the background relevant to today's ruling, and is incorporated herein. <u>See</u> --- F. Supp.2d ----, 2009 U.S. Dist. LEXIS 86737 (D.N.J. 2009). For the sake of brevity, the Court will refrain from revisiting the majority of the facts outlined in that ruling.

**A. The Property**

As discussed above, this matter involves a dispute over responsibility for the cost of remediating soil contamination on the Property, which was sold by the Mandelbaum Defendants to the Township and Woodmont in 1999. From 1941 until it was abandoned sometime prior to 1970, the Property was the site of a fruit orchard known as "Bonnieview Farms." During the orchard's operation, the Property's soil was contaminated with several hazardous chemicals – including dichlorodiphenyltrichloroethane ("DDT"), arsenic, and lead – that were widely utilized as pesticides prior to the enactment of environmental regulations banning their use. In 1970, the Property was purchased by the Mandelbaum Defendants. Those individuals held the Property for 29 years before splitting it into a 100-acre portion that was sold to the Township for use as open space to be enjoyed by Montville's citizens and a 30-acre portion on which Woodmont contracted to develop a residential neighborhood.

Prior to purchasing the Property, Montville hired the environmental engineering firm Post, Buckley, Schuh & Jernigan, Inc. ("PBS&J") to perform an environmental assessment on the land. In its April 1998 report, PBS&J noted that the Property contained various debris, but concluded that "none of the observed debris was considered hazardous, [but] additional material in lower layers could be classified as such. No sampling is recommended for this area at this time; however, when the debris is removed, the lower layers should be carefully examined." Before closing on the Property, Montville was told that the debris had been removed, but did not take steps to investigate possible contamination in the lower soil levels. After the purchase was complete, however, the Township discovered that the debris had not been removed. A later environmental survey of the Property revealed that the lower soil levels were contaminated.

After receiving the results of that survey, the Township conducted a voluntary cleanup of the Property in cooperation with the NJDEP.

**B. Prior District Court Proceedings**

On June 5, 2003, the Township filed suit seeking to recover the cost of its cleanup from PSB&J, Woodmont, and each of the individual Mandelbaum Defendants. In its 14-count Complaint, Montville asserted claims pursuant to (1) §§ 107(a) and 113(f) of the CERCLA, (2) the New Jersey Spill Act, and (3) various common law causes of action.[2] Both the Mandelbaum Defendants and PSB&J moved to dismiss. In an Opinion and Order dated August 31, 2004, this Court granted in part those motions, dismissing eight of the twelve counts asserted against the Mandelbaum Defendants and ten of the thirteen counts against PBS&J. On September 10, 2004, the Court amended its earlier Opinion and Order to dismiss an additional claim, Montville's action under CERCLA § 107(a) asserted against the Mandelbaums in Count I of its Complaint. See Montville Twp. v. Woodmont Builders, LLC, No. 03-2680, 2004 U.S. Dist. LEXIS 30606 (D.N.J. September 10, 2004).

On September 27, 2005, PBS&J moved to dismiss the remaining claims asserted against it. That motion was granted on January 6, 2006. In the same ruling, the Court dismissed with prejudice Montville's claims against all individual Defendants except David and Nathan Mandelbaum. The Township did not appeal that decision. Thus, PBS&J and the individual Defendants other than David and Nathan Mandelbaum are no longer involved in these proceedings.

After the Court's Amended Opinion and Order of September 10, 2004, the only remaining causes of action asserted by the Township against the Mandelbaum Defendants were

---

[2] Count I was brought under CERCLA § 107(a); Count II was brought under CERCLA § 113(f); Count III was for a declaratory judgment under CERCLA; and Count IV was brought under the New Jersey Spill Act. The remaining counts were common law claims.

for (1) contribution under CERCLA § 113(f) (Count II), (2) declaratory judgment under CERCLA (Count III), and (3) negligent misrepresentation (Count XII). The Mandelbaums later moved for summary judgment on those claims, while Woodmont moved for summary judgment or judgment on the pleadings dismissing the claims against it. On August 12, 2005, the Court granted those motions and dismissed all remaining claims. See Montville Twp. v. Woodmont Builders, LLC, No. 03-2680, 2005 U.S. Dist. LEXIS 18079 (D.N.J. Aug. 17, 2005). In doing so, the Court found that the Township's CERCLA and New Jersey Spill Act claims were barred by a January 22, 2004, settlement agreement between entered into by the Township and Woodmont in connection with a state court proceeding. The agreement stated that the Township would "make no claim of any sort under CERCLA or the New Jersey Spill Act or any other environmental statute or law against Woodmont or its contractors in connection with this cleanup." Id. at *3. In the alternative, the Court found that Montville's claims should be dismissed on their substantive merits. That holding was based partially on a portion of the Court's September 10, 2004 ruling in which it ruled that the Township could not bring a claim under CERCLA § 107(a) because it was a "potentially responsible party" ("PRP")[3] and had not asserted an "innocent owner" defense. Montville, 2004 U.S. Dist. LEXIS 30606 at *14. Having dismissed the Township's CERCLA § 107(a) claims in its earlier decision, the Court stated in its August 12, 2005 ruling that Montville could not seek contribution for the costs of its cleanup under CERCLA § 113(f) because it faced no liability under CERCLA §§ 106 or 107(a). Montville, 2005 U.S. Dist. LEXIS 18079 at * 21. On August 30, 2005, the Montville moved for reconsideration of the Court's August 17, 2005 Order, and also sought leave to amend its Complaint to assert an innocent owner defense – which would preclude its being a PRP and

---

[3] As stated by the Court of Appeals, "potentially responsible party" and "PRP" are EPA-created terms of art, and are not specifically used in CERCLA. However, they have been adopted and utilized by the Supreme Court. See Atl. Research, 551 U.S. at 131.

thereby allow the Township to state a CERCLA § 107(a) claim. The Court denied both motions on September 28, 2005, after which the Township sought review from the Court of Appeals.

**C. Appeal and Remand**

While the Township's appeal was pending the Supreme Court decided <u>Atlantic Research</u>, in which it held that (1) CERCLA § 113(f) does not provide the exclusive means of seeking cleanup costs for environmental remediation, and (2) a PRP may seek such costs under § 107(a) of the Act. That judgment overruled a previously-binding decision by the Court of Appeals on which this Court had relied in holding that the Township could not bring a claim under CERCLA § 107(a) because it was a PRP. <u>See</u> <u>E.I. DuPont de Nemours & Co. v. United States</u>, 460 F.3d 515, 543 (3d Cir. 2006) (holding that CERCLA § 113 provides the exclusive remedy for a PRP seeking cleanup costs from other PRPs, and such relief may not be pursued under § 107(a) unless the party alleges that it is an "innocent owner."). In <u>Atlantic Research</u>, the Supreme Court distinguished actions to recover incurred cleanup costs under § 107(a) – which may be sought by any private party, including a PRP, at any time – from actions for "contribution" under § 113(f), which may only be undertaken only by a party subject to a judgment or settlement agreement based on §§ 106 or 107(a) that resulted in an inequitable distribution of common liability. <u>Atl. Research</u>, 551 U.S. at 139 n.6 ("[C]osts incurred voluntarily are recoverable only by way of § 107(a)(4)(B), and costs of reimbursement to another person pursuant to a legal judgment or settlement are recoverable only under § 113(f).").

Based on the Supreme Court's ruling in <u>Atlantic Research</u>, the Court of Appeals reversed this Court's decision holding that Montville was not entitled to pursue a claim under CERCLA § 107(a) or declaratory judgment against the Mandelbaum Defendants or Woodmont because it was a PRP, and remanded for further proceedings. In doing so, it stated that:

> [T]he District Court was correct in concluding the Township could not sue for contribution under § 113(f) (because it faced no liability under §§ 106 or 107(a)), but incorrect in concluding the Township could not sue to recover costs under § 107(a) (because it was a PRP). On remand, the District Court should reconsider Counts I (CERCLA § 107(a)) and III (declaratory judgment under CERCLA) of the Township's complaint against the Mandelbaum Defendants and Woodmont in light of Atlantic Research Corp.

Montville Twp. v. Woodmont Builders, LLC, 244 Fed. App'x 514, 518 (3d Cir. 2007). Additionally, the Court of Appeals stated that, "[g]iven the District Court's focus on the merits of the CERCLA claims against the Mandelbaum Defendants and Woodmont in its summary judgment opinion, the court should also re-visit the question of whether the settlement agreement bars the Township's § 107(a) claim against Woodmont." Id. at 519 n.8.

The Court of Appeals noted that Montville's claims under the New Jersey Spill Act were not briefed by either party or addressed on appeal. It stated, however, that this Court's ruling dismissing those claims would be vacated, "if necessary," in light of the Supreme Court's decision in Atlantic Research. Id. at 519. In its pending motion, Montville alleges that it is entitled to summary judgment on its Spill Act claims. The Supreme Court did not address that statute in Atlantic Research. Therefore, there has been no intervening change in law that would affect the validity of the Court's earlier ruling. In light of the broad language used by the Court of Appeals in vacating that ruling, however, Montville's claims under the Spill Act arguably remain open and will be addressed in today's decision.

## II.  DISCUSSION

The parties now move for summary judgment on their respective claims. Montville contends that it is entitled to cleanup costs under CERCLA § 107(a) and a declaratory judgment as to the liability of both Woodmont and the Mandelbaum Defendants. Additionally, the Township claims that it is entitled to summary judgment on its claims under the New Jersey Spill

8

Act. Woodmont argues that (1) Montville's claims against it are barred by the January 22, 2004 settlement agreement and (2) the Township has failed to demonstrate that it disposed of any hazardous substances on the open space parcel of the Property. Similarly, the Mandelbaums claim that the Township has not adequately demonstrated that they disposed of any hazardous materials, and on that basis contend that the CERCLA and Spill Act claims against them must be dismissed.

**A. Standard of Review**

Summary judgment is proper where "there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the burden of proof at trial, the moving party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case. Id. at 325. If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine fact issue exists and a trial is necessary. Id. at 324. In meeting its burden, the non-moving party must offer specific facts that establish a material dispute, not simply create "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In deciding whether an issue of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The Court's function, however, is not to weigh the evidence and rule on the truth of the matter, but rather to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If there are no issues that require a trial, then judgment as a matter of law is appropriate. Id. at 251-52.

**B. Common Law Claims**

The substantive merits of the Township's common law claims, which are laid out in Counts V through XII of its Complaint, need not be revisited. All but one of those claims – the Township's negligent misrepresentation allegations contained in Count XII – were dismissed as to the Mandelbaums in this Court's September 10, 2004 Opinion and Order. See Montville, No. 03-2680, 2004 U.S. Dist. LEXIS 30606 at *43. The Court granted summary judgment in favor of the Mandelbaums and dismissed the remaining common law claim against them on August 12, 2005. In the same ruling, it granted Woodmont's request for judgment on the pleadings on Counts V through X and summary judgment on Counts XI and XII. See Montville, 2005 U.S. Dist. LEXIS 18079 at * 37-38.

In its Motion for Reconsideration of the latter ruling, the Township only made arguments relating to its claims under the CERCLA and New Jersey Spill Act. There was no mention whatsoever of Montville's common law claims in the brief it filed in support of its Motion. See generally (Pl.'s Br. Supp. Mot. Reconsideration of August 26, 2005.) Similarly, the Township did not raise its common law claims in its appeal from this Court's denial of its Motion for Reconsideration. In fact, the Court of Appeals specifically noted that "[t]he parties' briefing [on appeal] did not analyze the remaining New Jersey Spill Act and common law claims, which is

not surprising because the focus of this action is on the CERCLA claims." Montville, 244 Fed. App'x at 519. The Court of Appeals then stated that "[n]onetheless, we will vacate the District Court's disposition of the remaining claims for reconsideration, if necessary, in light of this opinion." Id. (emphasis added). As the emphasized portion of that statement makes clear, the Court of Appeals vacated this Court's judgment only with respect to those issues that were raised in Montville's Motion for Reconsideration. Thus, the Court of Appeals left undisturbed the portions of this Court's September 10, 2004 and August 12, 2005 rulings dismissing Montville's common law claims, and that dismissal remains effective.

Even if the Court of Appeals had not specifically limited its decision to Montville's CERCLA and New Jersey Spill Act claims, well-established precedent would compel the conclusion that the vacatur did not apply to this Court's dismissal of the common law claims. It is axiomatic that, "absent exceptional circumstances, issues not raised before the district court are waived on appeal." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 253 (3d Cir.2007). "[A]ny issue that could have been but was not raised on appeal is waived and thus not remanded." Beazer E., Inc. v. Mead Corp., 525 F.3d 255, 263 (3d Cir. 2008). It is undisputed that the Township made no arguments relating to its common law claims during its appeal. In fact, the Township made no reference to those claims in its Motion for Reconsideration – the denial of which led to its appeal – and has not raised those claims since the case was remanded. Therefore, the Township has waived its opportunity to dispute the dismissal of its common law claims.

**C. Montville's CERCLA and New Jersey Spill Act Claims Against Woodmont**

The Township's CERCLA and New Jersey Spill Act claims against Woodmont are barred by the January 22, 2004 settlement between the parties. That agreement, which was

11

entered into in connection with a state litigation between Montville and Woodmont, stated that the Township would "make no claim of any sort under CERCLA or the New Jersey Spill Act or any other environmental statute or law against Woodmont or its contractors in connection with this cleanup." See Montville, 2005 U.S. Dist. LEXIS 18079 at *3.  Pursuant to the settlement agreement, the state court in February 2004 entered a stipulation and Order dismissing with prejudice the Township's claims against Woodmont.  Id.  The Township has not sought in the present action to void that Order or the settlement.  Therefore, the settlement agreement remains effective, and its specific language barring Montville's CERCLA and Spill Act claims against Woodmont requires that those claims be dismissed.  See Fisher Dev. Co. v. Boise Cascade Corp., 37 F.3d 104, 109-110 (3d Cir. 1994) (holding that (1) parties may contractually allocate their responsibility for environmental pursuant to CERCLA § 107(e)(1) and (2) an agreement including a general release of liability is effective in barring future CERCLA claims).

      Even in the absence of the settlement agreement's bar, Woodmont would be entitled to summary judgment on Montville's CERCLA and Spill Act claims.  In its initial brief, the Township alleged that Woodmont was liable as a "person who arranged for the disposal of hazardous substances on the property of another" pursuant to CERCLA § 107(a)(3).  See 42 U.S.C. § 9607(a) (outlining the four categories of PRPs who may be held liable under CERCLA § 107).  The Court specifically found that Woodmont was not an "arranger" in its September 22, 2009 ruling in the companion case brought by the homeowners on the 30-acre residential portion of the Property.  Bonnieview, 2009 U.S. Dist. LEXIS 86737 at *41-42 ("[T]here is no evidence that Woodmont took intentional steps to dispose of a hazardous substance – because it is undisputed that Woodmont was unaware of the contamination in the soils at the time it developed the Residential Lots – so it cannot be liable as an arranger under § 107(a)(3).").

12

In its reply brief, the Township changed its argument to contend that Woodmont is liable under CERCLA § 107(a)(2) as an "operator" of the Property. In order to establish that Woodmont is liable as an "operator" of the open space parcel, the Township must demonstrate that Woodmont "disposed of" hazardous chemicals on that section of the Property. It is undisputed that Woodmont did not add any additional pesticides to the Property. The Township argues, however, that Woodmont's removal of debris from the open space portion of the Property and construction of two retention basins on that area constituted a disposal. That argument is premised on the Township's contention that Woodmont removed soil while building those basins and then spread that soil – which Montville claims was contaminated – across the rest of the open space portion of the Property.

The Township has not offered any evidence that Woodmont's activities on the open space parcel of the Property – as distinct from the 30-acre residential plot that is the subject of the suit in Bonnieview – resulted in the spread of contaminated soil. In fact, the Township has presented no evidence that the small portions of soil on the open space parcel that were disturbed in connection with Woodmont's activities on that portion of the Property were, in fact, contaminated. Rather, the Township makes the blanket statement that "[i]mpacts from Woodmont Builders' activities have been well documented in the soil investigations conducted at the Subject Property." (Pl.'s Br. Supp. Mot. Summ. J. 22.) In making that statement, Montville presumably alludes to an environmental report commissioned by the plaintiff's in Bonnieview, which found that Woodmont's activities in clearing, aggregating, and then redistributing the top layer of soil on the 30-acre residential parcel of the Property likely resulted in the spread of hazardous chemicals to portions of that soil that had not previously been contaminated. See Bonnieview, 2009 U.S. Dist. LEXIS 86737 at *18-22 (discussing the report

13

and its findings). That report dealt only with the residential portion of the Property. Although Montville could have commissioned a similar report examining the open space parcel, they have not done so. Thus, the Court is left with nothing but the Township's unsupported factual allegations that Woodmont's activities on the open space parcel resulted in the disposal of contaminants. Such allegations, without more, cannot form the basis for a reasonable judgment in the Township's favor. See Anderson, 477 U.S. at 252 (A "mere scintilla of evidence [is] insufficient [to survive a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff."). Therefore, the Court would be required to grant summary judgment in favor of Woodmont on the CERCLA claims asserted against it even if those claims were not barred by the January 22, 2004 settlement agreement between the parties.

The merits of the Township's claim against Woodmont under the New Jersey Spill Act are similarly deficient. Under that statute, "[a]ny person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable … for all cleanup and removal costs no matter by whom incurred." N.J. Stat. Ann. § 58:10-23.11g(c)(1). A "discharge" is defined as, "any intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of hazardous substances into the waters or onto the lands of the State." N.J. Stat. Ann. § 58:10-23.11b. "New Jersey courts have consistently interpreted the definition of 'discharge' to exclude the migration of hazardous substances already present in the soil or in groundwaters." White Oak Funding, Inc. v. Winning, 775 A.2d 222, 225 (N.J. Super. App. Div. 2001). Thus, "[i]mposition of Spill Act liability … requires some act or omission of human conduct which causes a hazardous material not previously present to enter the waters or land." Id. at 225. As discussed above, it is undisputed that Woodmont did not add any contaminants that were not

14

previously present the soil of the open space parcel of the Property.  Therefore, Woodmont would be entitled to summary judgment if the Court were to consider the merits of the Township's Spill Act claims.

### D.  Montville's CERCLA and New Jersey Spill Act Claims Against the Mandelbaums

Montville's claims against the Mandelbaum Defendants also fail.  The Township alleges that the Mandelbaums are liable under CERCLA § 107(a)(2) as former owners or operators of the Property.  That section defines as a PRP "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of."  See 42 U.S.C. § 9607(a)(2).  CERCLA § 101(29) adopts the definition of "disposal" from the Solid Waste Disposal Act, 42 U.S.C. § 6903(3), which states:

> The term "disposal" means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

The Court of Appeals has held that the term "disposal" includes "not only the initial introduction of contaminants onto a property but also the spreading of contaminants due to subsequent activity."  United States v. CDMG Realty Co., 96 F.3d 706, 719 (3d Cir. 1996).  "[T]his definition of disposal does not limit disposal to a one-time occurrence – there may be other disposals when hazardous substances are moved, dispersed, or released during landfill excavations and fillings."  Id. (quoting Tanglewood E. Homeowners v. Charles-Thomas, Inc., 849 F.2d 1568, 1573 (5th Cir. 1988) (internal quotations omitted)).

Montville contends that there are material questions of fact as to whether the Mandelbaums disposed of hazardous chemicals on the open space parcel during the period between 1970 and 1999 when they owned the Property.  The Township has produced no

15

evidence that the Mandelbaums engaged in excavations that moved, dispersed, or spread the contaminants that were in the soil when they took possession of the Property, and does not appear to make any allegations to that effect. Rather, the Township claims that the Mandelbaums continued to operate an orchard during the 29 years in which they owned the Property, and that operation resulted in the addition of the contaminants at issue in this case – which include DDT, arsenic, and lead – to the soil in the open space parcel. The Township presents only two pieces of evidence in support of that contention: (1) an Application for Farmland Assessment to the State of New Jersey ("Farm Assessment form") submitted by David Mandelbaum in 1989 in which he stated both that the entire Property was used for "fruit crops" and that the entire Property was used for "woodland products," and (2) an unsigned draft of a 1988 federal tax return for Bonnieview Farms that listed "fruit" as the principal product or service.

No reasonable juror could hold that the Mandelbaums disposed of hazardous materials on the Property based on the Township's evidence. As a preliminary matter, the Court notes that the second form submitted by Montville in support of its claim – the 1988 federal tax return – appears wholly unreliable. As stated in Bonnieview, 2009 U.S. Dist. LEXIS 86737 at *6 n.2, "[t]here is no evidence that this form was anything more than a draft prepared by an outside accountant or that it was ever finalized, signed or filed with the Internal Revenue Service." The version of the form furnished by Montville in connection with this litigation does not bear a signature, and the Township has been unable to produce a signed and authenticated copy – despite the fact that it could have easily done so at any point during the almost six-year duration of this case by making a discovery request for the Mandelbaums' tax records. Without such evidence, no reasonable juror could attribute the representation contained in the form that the

16

Property's principal product was "fruit" to the Mandelbaum Defendants. Therefore, the Court will disregard the draft 1988 federal tax return.

The 1989 Farm Assessment form submitted by the Township in support of its claim is similarly unreliable. One portion of that form states that the entire Property was used for "fruit crops," while another specifies that the entire parcel was used for "woodland products." The Mandelbaums argue that the inclusion of "fruit crops" on the form was simply an error. That contention draws support from the testimony of local residents, who stated that the orchard previously located on the Property ceased operation in the 1960s. Moreover, the Township has not produced any documentation – such as receipts from the sale of the fruit that was supposedly produced on the Property; payroll records for the orchard's workers; or an expert report alleging that the hazardous chemicals in the soil were introduced in the late 1980s, when it alleges the Mandelbaums were operating the orchard, rather than almost 20 years earlier[4] – that the Property was used for fruit-bearing trees that would necessitate the use of pesticides rather than forest products.

In fact, Montville's own evidence lends credence to the Mandelbaums' claims that the inclusion of "fruit crops" on the Farm Assessment form was an error. The Township states in its brief that the Mandelbaums filed such an assessment for the years 1988, 1989, and 1990. Tellingly, though, it has produced only the 1989 form. It is likely that the Township's omission of the other two forms was motivated by the fact that they do not include a reference to fruit

---

[4] A rough estimate of the time period on which the chemicals were introduced to the soil could presumably have been produced by tracking the degree to which the various pesticides had broken down into their component elements or combined with other substances in the soil, and then comparing that data to pesticides that had been introduced to similar soil at a known time.

17

crops.[5]  Moreover, it is highly improbable that the Mandelbaums could have operated a fruit orchard for a period of only three years – the investment of time and capital involved in planting the threes necessary for such a venture would have consumed several years, and it would have been completely irrational to allow the trees to mature only to abandon the operation after such a short period of time.

The implausibility of the Township's allegations that the Mandelbaums added hazardous chemicals to the Property by operating a fruit farm in the late 1980s is further demonstrated by the fact that at least one of the chemicals present in the soil on that land, DDT, would not have been available at that time.  The sale and use of that chemical in the United States was banned by the Environmental Protection Agency in 1972.  See Envtl. Def. Fund v. EPA, 489 F.2d 1247, 1249-50 (D.C. Cir. 1973) (discussing the administrative proceedings leading up to the ban and upholding the agency action prohibiting the use of DDT).  Even if the Mandelbaums had been operating a fruit orchard on the Property, they would not have been able to purchase and use DDT, and thus could not have been responsible for the addition of that chemical to the soil on the open space parcel.

---

[5] It is worth noting that the Township has failed, despite repeated requests on the part of the Mandelbaums, to produce various documents related to the contamination on the Property. Those documents include (1) an environmental report relating to the remediation of the Property during the Township's cleanup, (2) minutes from meetings of the Township Committee and Executive Session, (3) reports of the Township Environmental Commission and Health Department, (4) and all Farm Assessment forms submitted by the Mandelbaums from 1970 until they sold the Property in 1999.  On October 1, 2008, this Court entered an Order compelling the production of those documents.  The Township has failed to comply with that Order, and the Mandelbaum Defendants have moved for sanctions under Federal Rule of Civil Procedure 37(b). Because today's ruling disposes of all remaining claims, the pending Motion for Sanctions need not be addressed.  However, the fact that the Township is in default of its discovery obligations would be grounds for dismissal even if its claims were meritorious.  See Fed. R. Civ. P. 37(b)(2)(A)(v) (authorizing dismissal of a party's claims for failure to comply with a discovery order); Nat'l Hockey League v. Metro. Hockey Club, 427 U.S. 639, 643 (1976) (affirming order of dismissal for repeated failure to comply with discovery orders).

In light of that fact and the unreliability of the only two pieces of evidence submitted by Montville in support of its contention that the Mandelbaums operated a fruit orchard on the Property, the Court finds that no reasonable juror could rule that the Mandelbaums disposed of hazardous materials during their period of ownership.  Therefore, the Mandelbaums' Motion for Summary Judgment will be granted and the Township's claims for cleanup costs under CERCLA § 107(a)(2) and declaratory judgment will be dismissed.  See Anderson, 477 U.S. at 252 (stating that unsupported factual allegations that amount to a "mere scintilla" of evidence will not be sufficient to survive a motion for summary judgment).

The Township's claims under the New Jersey Spill Act must also fail.  "Imposition of Spill Act liability … requires some act or omission of human conduct which causes a hazardous material not previously present to enter the waters or land."  See White Oak, 775 A.2d at 225. As discussed above, the Township has presented no credible evidence that the Mandelbaums added any hazardous material to the soil on the Property.  Therefore, the Court will grant summary judgment in favor of the Mandelbaums and dismiss the Township's Spill Act claims.

## III.  CONCLUSION

For the reasons set forth above, the Motions for Summary Judgment by Woodmont and the Mandelbaum Defendants are granted.  The Township's Motion for Summary Judgment is denied, and all remaining claims are dismissed.

The Court will enter an Order implementing this Opinion.


  **s/ Dickinson R. Debevoise**
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: October 7, 2009